**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4646

CLEVE WILLIAM FRAZIER, a/k/a Tutu,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4651

WESLEY HODGE,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-96-54-BO)

Submitted: October 30, 1998

Decided: November 13, 1998

Before LUTTIG, WILLIAMS, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William Henry Barker, New Bern, North Carolina; Sema E. Leder-
man, Raleigh, North Carolina, for Appellants. Janice McKenzie Cole,

United States Attorney, Anne M. Hayes, Assistant United States Attorney, Christine Witcover Dean, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Wesley Hodge and Cleve Frazier appeal their convictions after a jury trial for conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 (1994). Defendant Hodge was sentenced to life imprisonment and ten years of supervised release. Defendant Frazier was sentenced to 360 months of imprisonment and five years of supervised release. Defendants allege that their convictions are not supported by sufficient evidence. They also allege that the Government did not provide exculpatory evidence and therefore their convictions should be reversed. Finding no error, we affirm.

Frazier and Hodge were involved in drug distribution rings in Mansfield, Harlowe, and New Bern, North Carolina. Kenny Spell established a structured organization that was joined first by Hodge, and later by Frazier. As the original organization began to deteriorate due to member arrests and deaths, Frazier and Hodge began to operate their own organizations made up in part from the original organization members. Hodge and Frazier agreed with various co-conspirators to supply and sell drugs for each other.

At trial, several law enforcement officers testified about the drug investigations in the area and about the Defendants' arrests. Law enforcement officers did not discover any drugs or drug paraphernalia when they arrested the Defendants. The Government relied upon the testimony of several co-conspirators, and Hodge's cellmate, to prove the Defendants' involvement in the drug distribution conspiracy.

2

We review challenges to the sufficiency of the evidence by viewing the evidence at trial in the light most favorable to the prosecution, including all reasonable inferences that can be drawn from the evidence. See Glasser v. United States, 315 U.S. 60, 82 (1942); United States v. Russell, 971 F.2d 1098, 1109 (4th Cir. 1992). The district court's assessment of the witness's credibility is not subject to review. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

The Defendants base their argument upon their claim that no reasonable jury could have convicted them on the basis of the testimony of law enforcement agents because they could not testify to the presence of any physical evidence of drugs, drug paraphernalia, or drug distribution. They allege that the jury improperly relied upon the testimony of convicted criminals hoping to reduce their sentences in exchange for their testimony.

A conspiracy may be proven by circumstantial evidence, without any physical evidence presented related to drug activity. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868). Further, a co-conspirator's uncorroborated testimony is admissible and sufficient to support a conviction. See United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993). The Defendants do not allege that the evidence was insufficient to support their convictions if the jury believed the testimony of the co-conspirators. The testimony of nine co-conspirators established that the Defendants took many actions to further the goal of the conspiracy. They recruited people to sell for them and obtain drugs for distribution. They expanded their consumption market by buying and selling in Mansfield, Harlowe, and New Bern, North Carolina. In addition, the co-conspirators testified to the agreement by the Defendants to further the conspiracy. The Defendants' reliance upon United States v. Bell, 954 F.2d 232 (4th Cir. 1992), is misplaced because in Bell, the co-conspirators did not testify to an agreement. We therefore find that there was sufficient evidence to support the convictions.

Defendants allege that the district court erred in allowing two Government witnesses to testify regarding the Defendants' involvement in the drug conspiracy when the Government failed to produce the witnesses' written lists of names of persons with whom they had dealt

3

drugs, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Michael Anderson, an alleged co-conspirator of the Defendants, testified that in early 1996, he provided a handwritten statement to George Shaver of the New Bern, North Carolina, Police Department that included a list of names of persons with whom he had dealt drugs. Anderson testified that he did not remember if he included Defendant Hodge's name on the list.

At the conclusion of Anderson's testimony, counsel for Hodge moved for production of Anderson's handwritten list. The prosecutor explained to the court that the list had been transcribed in Officer Shaver's police report. The Government provided the report to defense counsel during discovery. Hodge's counsel acknowledged receipt of Shaver's report. During a voir dire examination outside the presence of the jury, Anderson testified about his list and stated that Shaver's report contained an accurate transcription of the list. Counsel for Frazier then moved to dismiss the indictment or for a mistrial because the Government had not produced Anderson's written list. Counsel for Hodge moved to dismiss or strike Anderson's testimony on the same basis. The district court reserved judgment on the issue. The Government located Anderson's written list during trial. Anderson was recalled and both Defendants had the opportunity to cross-examine Anderson regarding the list. Counsel for Hodge cross-examined Anderson on the topic, but counsel for Frazier did not.

Government witness Harry Brown also provided a handwritten statement to Officer Shaver in early 1996 that included a list of persons with whom he dealt drugs. The prosecutor was unable to locate Brown's handwritten statement upon the Defendants' request and told the court that it had apparently been destroyed. Brown testified outside the presence of the jury that he provided Shaver with a handwritten document concerning this case. He testified that Defendant Hodge was not mentioned in the document because he did not know Hodge. Brown also testified that he did not mention Frazier in the document. Brown then reviewed Shaver's report and testified that it accurately reflected the contents of the handwritten document that he gave to Shaver. Defense counsel asked the court to prohibit Brown from testifying based upon an alleged violation of <u>Brady</u> and the Jencks Act, 18 U.S.C. § 3500 (1994). The court denied the motion because

4

defense counsel would have the opportunity to challenge the accuracy of Shaver's report and cross-examine Brown about the document.

To determine if failure to provide the defense with favorable evidence is a violation of due process, the defendant must show that the undisclosed evidence was both favorable and material. See United States v. Ellis, 121 F.3d 908, 915 (4th Cir. 1997), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3457 (U.S. Jan. 12, 1998) (No. 97-7095). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the trial would have been different. See United States v. Bagley , 473 U.S. 667, 682 (1985). If the evidence is available from other sources, there is no Brady violation, even if the Government does not produce the evidence. See United States v. Wilson, 901 F.2d 378, 380 (4th Cir. 1990). If the impeachment value of the undisclosed evidence is cumulative, the evidence is not material because it does not alter the trial's outcome.

The information in the written lists was available to the Defendants through Officer Shaver's reports, which were produced during discovery. This information was sufficient to allow Defendants to cross-examine the witnesses about the lists that they gave to police and question them about omitting the Defendants' names from the list. Defense counsel also had the opportunity to interview Brown and Anderson prior to trial; therefore the evidence was available from other sources. See Wilson, 901 F.2d at 380.

Moreover, the Defendants were not prejudiced by the failure to produce the witnesses' handwritten lists before Anderson's initial cross-examination or Brown's cross-examination. The Defendants had Officer Shaver's reports, which Anderson and Brown testified were accurate with their handwritten lists. Because the Government timely produced Shaver's reports, the handwritten lists were cumulative evidence and their production before trial would not have altered the outcome of the trial. Therefore, the district court did not err in denying Defendants' motions for a mistrial or dismissal.

Finally, the Defendants contend that the trial court should not have permitted Brown to testify because the Government was unable to provide them with the witness's handwritten list of names prior to his

5

testimony and therefore the Government violated the Jencks Act. The Defendants did have Officer Shaver's report of the contents of the list, which the witness adopted.[1]

The failure to preserve potentially useful evidence only results in a denial of due process if the defendant shows bad faith on the part of the police. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988).[2] A defendant's due process rights are not violated when evidence is inadvertently lost. See United States v. Sanders, 954 F.2d 227, 231 (4th Cir. 1992). The Defendants did not contend that the Government lost or destroyed the document in bad faith. They allege only that the Government's inability to produce the document is suspicious.

The Defendants do not attempt to show any bad faith on the part of the police, or prejudice resulting from the loss or destruction of Brown's statement. The prosecutor stated to the court that the police officers searched all files and could not find the original handwritten document given by Brown to the police over one year earlier. We find that the Defendants do not demonstrate anything more than inadvertence. In addition, the Defendants do not demonstrate that even assuming the Government produced Brown's handwritten list, in light of the overwhelming evidence of their guilt, a reasonable probability existed that the list would have changed the result of trial. See Bagley, 473 U.S. at 682-83. We therefore find that this claim is without merit.

We therefore affirm the judgments. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED
_____

[1] Although Defendant Hodge complains of this error, Brown never testified about Hodge, except to say that he did not know him. Also, counsel for Hodge did not cross-examine Brown. It does not appear to the court that Hodge may allege prejudice from Brown's testimony.

[2] The Defendants incorrectly assert that the Government had the burden of proving that the statement was destroyed in good faith.

6